**ORAL ARGUMENT NOT YET SCHEDULED**

No. 26-5023
Consolidated with Nos. 26-5047, 26-5049

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

UNITED STATES OF AMERICA, *ET AL.*,

*Plaintiffs-Appellees-
Cross-Appellants*,

v.

GOOGLE LLC,

*Defendant-Appellant-
Cross-Appellee*.

———————————

On Appeal from the United States District Court
for the District of Columbia
No. 20-cv-3010 (APM), No. 20-cv-3715 (APM) (Honorable Amit P. Mehta)

———————————

**BRIEF OF MOZILLA CORPORATION AS *AMICI CURIAE*
IN SUPPORT OF NEITHER PARTY AND REVERSAL**

———————————

JUAN A. ARTEAGA
ROSA M. MORALES
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
juan.arteaga@sidley.com
rosa.morales@sidley.com

*Counsel for Amicus Curiae Mozilla Corporation*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), amicus curiae certifies as follows:

### A.  Parties and Amici Curiae

All known parties, intervenors, and amici appearing before the District Court and this Court are accurately identified in the Parties' combined certificates.  Since then, Mozilla Corporation, Brave Software, Inc., Apple Inc., and Samsung Co., Ltd. have been granted leave to file amicus briefs.  On May 28 and 29, 2026, Washington Legal Foundation and former antitrust enforcers Terry Calvani, William Kolasky, Abbott B. Lipsky Jr., and Joe Sims filed amicus briefs.

### B.  Rulings Under Review

The rulings at issue are identified in the Brief for Defendant-Appellant-Cross-Appellee.

### C.  Related Cases

The cases now pending before this Court have not previously been before this Court or any other court. Counsel is not aware of any related cases pending before this Court or any other court besides those identified in the Brief for Defendant-Appellant-Cross-Appellee.

/s/ *Juan A. Arteaga*
Juan A. Arteaga

C-1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, amicus curiae Mozilla Corporation, a California corporation, certifies that Mozilla Corporation is a wholly-owned subsidiary of the Mozilla Foundation. The Mozilla Foundation is not publicly traded and has no parent company. No publicly held corporation owns 10% or more of Mozilla Corporation's stock.

/s/ Juan A. Arteaga
Juan A. Arteaga

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .........C-1

CORPORATE DISCLOSURE STATEMENT .....................................................C-2

TABLE OF AUTHORITIES ................................................................................. ii

INTEREST OF AMICUS CURIAE .......................................................................1

SUMMARY OF ARGUMENT ............................................................................2

RELEVANT FACTUAL BACKGROUND............................................................6

      A.     Mozilla's Procompetitive Mission To Build An Open And Healthy Internet Ecosystem ......................................................................6

      B.     Mozilla Has Consistently Designed And Operated Firefox To Promote Search Competition And User Choice ...............................10

      C.     Mozilla's Gecko Browser Engine Promotes Open And Secure Web Standards Provides Website And Browser Developers with A Non-Big Tech Alternative .........................................................14

ARGUMENT ......................................................................................................16

I.     THE DISTRICT COURT ERRONEOUSLY HELD THAT MOZILLA'S GOOGLE DISTRIBUTION AGREEMENT IS AN EXCLUSIVE DEAL..................................................................................................16

CONCLUSION...................................................................................................23

CERTIFICATE OF COMPLIANCE....................................................................25

CERTIFICATE OF SERVICE ............................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
　836 F.3d 1171 (9th Cir. 2016) .................................................................17

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
　821 F.3d 394 (3d Cir. 2016) ...................................................................23

*Omega Env't, Inc. v. Gilbarco, Inc.*,
　127 F.3d 1157 (9th Cir. 1997) ................................................................23

*United States v. Google LLC*,
　747 F. Supp. 3d 1 (D.D.C. 2024)............................................5, 12, 17, 18, 19, 22

**Other Authorities**

Anny Gakhokidze & Neha Kochar, *Introducing Site Isolation in Firefox*, Mozilla (May 18, 2021),
　https://blog.mozilla.org/security/2021/05/18/introducing-site-isolation-in-firefox/ .................................................................8

AWS, *Why AWS loves Rust, and how we'd like to help* (Nov. 24, 2020), https://aws.amazon.com/blogs/opensource/why-aws-loves-rust-and-how-wed-like-to-help/ .................................................................9

Distilled, *AI controls are coming to Firefox* (Feb. 2, 2026), https://blog.mozilla.org/en/firefox/ai-controls/ .................................................................14

Distilled, *Mozilla Welcomes the Rust Foundation* (Feb. 8, 2021), https://blog.mozilla.org/en/mozilla/mozilla-welcomes-the-rust-foundation/ .................................................................9

Fast Co., *Mozilla is now offering free AI voice training data in 180 languages* (Nov. 8, 2024), https://www.fastcompany.com/91224595/mozilla-is-now-offering-free-ai-voice-training-data-in-180-languages .................................................................9

Firefox, *Firefox Public Data Report*,
https://data.firefox.com/dashboard/user-activity (last visited May
26, 2026) ..................................................................................................9

Firefox, *The browsing assistant that thinks with you, not for you*,
https://www.firefox.com/en-US/smart-window/ (last visited May
29, 2026) ................................................................................................13

Jane Silber, *Empowering developers with open AI tools for a
trustworthy future*, Mozilla, https://www.mozilla.org/en-
US/foundation/annualreport/2024/article/empowering-developers-
with-open-ai-tools-for-a-trustworthy-future/ (last visited May 29,
2026) ......................................................................................................14

Let's Encrypt, *About Let's Encrypt*, https://letsencrypt.org/about/ (last
updated Feb. 12, 2021) ............................................................................9

Mozilla Found., *This is Who We Are*,
https://foundation.mozilla.org/en/who-we-are/ (last visited May 29,
2026) ........................................................................................................7

Mozilla Support, *Access AI chatbots in Firefox*,
https://support.mozilla.org/en-US/kb/ai-chatbot (last updated Feb.
4, 2026) ..................................................................................................13

Mozilla Support, *Firefox privacy and security features*
https://support.mozilla.org/en-US/kb/firefox-privacy-and-security-
features (last updated Oct. 22, 2024) ......................................................8

Mozilla, *Competition, Innovation and the Future of the Web—Why
Independent Browser Engines Matter* (Mar. 23, 2026),
https://blog.mozilla.org/netpolicy/2026/03/23/competition-
innovation-and-the-future-of-the-web/ ...........................................14, 15

Mozilla, *Firefox Privacy* Notice, https://www.mozilla.org/en-
US/privacy/firefox/#notice (last visited May 26, 2026).........................7

Mozilla, *History of the Mozilla Project*, https://www.mozilla.org/en-
US/about/history/ (last visited May 29, 2026).......................................7

iii

Mozilla, *Mozilla Foundation About the Mozilla Corporation*
https://www.mozilla.org/en-US/foundation/moco/ (last visited May
29, 2026) .......................................................................................................7

Mozilla, *Mozilla Foundation releases the highly anticipated Mozilla
Firefox 1.0 web browser* (Nov. 9, 2004),
https://blog.mozilla.org/press/2004/11/mozilla-foundation-
releases-the-highly-anticipated-mozilla-firefox-1-0-web-browser/ .....................7

Mozilla, *New Search Strategy for Firefox: Promoting Choice and
Innovation* (Nov. 19, 2024),
https://blog.mozilla.org/press/2014/11/new-search-strategy-for-
firefox-promoting-choice-and-innovation/ .........................................................11

Mozilla, *The Mozilla Manifesto Addendum*,
https://www.mozilla.org/en-US/about/manifesto/ (last visited May
29, 2026) .......................................................................................................7

Mozilla.ai, *We're building a future where AI works for you*
https://www.mozilla.ai/ (last visited May 29, 2026) .........................................14

WebKit, *Announcing the WebKit Tracking Prevention Policy* (Aug.
14, 2019), https://webkit.org/blog/9507/announcing-the-webkit-
tracking-prevention-policy/ ................................................................................8

**INTEREST OF AMICUS CURIAE**

Mozilla Corporation ("Mozilla") is a wholly-owned subsidiary of the Mozilla Foundation, a non-profit organization devoted to promoting an open and healthy internet ecosystem that serves the public good.[1]  As a mission-driven company, Mozilla develops open-source products that foster innovation and prioritize user privacy and security over profits; advocates for web standards and regulations that promote competition and enable users to control their online experience; and campaigns against unfair and deceptive business practices in the technology industry.

Mozilla's flagship products are its privacy-focused Firefox browser, which has over 200 million monthly active users worldwide, including 26 million in the United States, and Gecko browser engine, which powers Firefox and other independent browsers and is the only non-Big Tech browser engine available to website and browser developers.

Like other browser developers, Mozilla monetizes its Firefox browser by entering into search distribution agreements, which provide the revenue needed to fund Mozilla's operations, product development, and public advocacy work.  Under

---

[1] All parties have consented to the filing of this amicus brief.  No counsel for a party authored any part of this brief, and no party, party's counsel, or any other person—other than amicus curiae or its counsel—contributed money intended to fund the preparation or submission of this brief.

these agreements, Mozilla includes various search engines in Firefox and receives a percentage of advertising revenue generated by queries conducted by users through one of these search engines.  Since 2017, Google has served as the out-of-the-box default search engine in Firefox ("Google Distribution Agreement").

Mozilla submits this amicus brief to assist this Court's review of the District Court's erroneous holding that Mozilla's Google Distribution Agreement constitutes an impermissible exclusive contract under Section 2 of the Sherman Act.  This holding is unsupported by the caselaw and evidentiary record and is directly contrary to Mozilla's longstanding commitment to promoting user choice and search engine competition.[2]

## SUMMARY OF ARGUMENT

As the wholly-owned subsidary of a non-profit organization, Mozilla's mission is to promote an open and healthy internet ecosystem that respects individuals' rights, fosters user choice, promotes competition and innovation, and serves the public good.  Accordingly, Mozilla fully supports the vigorous enforcement of the antitrust laws in technology markets and the goal of achieving greater search engine competition.

---

[2] Pursuant to this Court's May 26, 2026 Order, Mozilla will file a separate amicus brief addressing the Government Plaintiffs' cross-appeal of the District Court's rejection of their proposal to bar Google from compensating distributors of Google Search.

Indeed, Mozilla has consistently used its Firefox browser to promote search engine competition in the United States and abroad.  For example, when Mozilla released Firefox 1.0 in 2004, it ensured that its default search distribution agreement did not contain any exclusivity requirements and subsequently refused to enter into any express or *de facto* exclusive agreements.  Consistent with its refusal to enter into any exclusive agreements, Mozilla has always included numerous non-default search engines in Firefox and made them readily available to users through the search bar.

Moreover, Mozilla has designed Firefox to enable users to use non-default search engines whenever they choose.  For example, Mozilla has integrated a "this time, search with" feature into Firefox that proactively surfaces various non-default search engines and permits users to conduct searches using any of these search engines—whether for an individual search or on an ongoing basis.  Mozilla has also integrated a "Firefox Suggest" feature that proactively identifies websites and different search engines that users may want to use based on what they have begun to type into the address bar.  In addition, Mozilla has made it easy for Firefox users to switch the default search engine in a few simple steps and provides users with information on how to complete these steps.

Most notably, Mozilla sought to promote search engine competition in the United States by changing the out-of-the-box search default in Firefox from Google

to Yahoo between 2014 and 2017.  Despite the fact that the Firefox search default agreement generates the vast majority of Mozilla's revenue, Mozilla opted to switch away from Google's market-leading search engine because it viewed promoting search engine competition and innovation as core to its public-oriented mission. Unfortunately, as Mozilla's CFO testified, Mozilla's selection of Yahoo was a risky bet on search engine competition that did not pay off:

> What we found almost immediately is that our users did not like the Yahoo! Search experience . . . .
>
> [P]eople shifted away from the default and went to another search engine . . . . Search volumes declined. . . . We got [user] complaints.  And then finally people started shifting away from [Firefox].

Rem_Tr_3144:12-21.[3]

After carefully considering its different search engine options, Mozilla decided in 2017 to again set Google Search as the out-of-the-box default in Firefox because "Google is the clear winner when it comes to product experience and what users want."  DX0543_at_493.  Since then, Mozilla has consistently renewed its Google Distribution Agreement because the "extension[s] allow[] Mozilla to

---

[3] "Rem_Tr_" citations are to the remedies trial transcript. "Baker_Dep_" citations are to excerpts from the deposition of Mozilla's former CEO that the Parties designated during the liability trial proceedings.  Citations to "DX" and "RDX" are to the Parties' trial exhibits.  The term "Independent Browser Developer" means browser developers that do not own an operating system or desktop/mobile devices. The term "GSE" means general search engine.

4

continue offering Firefox users the best search experience by incorporating the search product and services that [Mozilla's] experience shows are the highest quality," and because "Google Search provides Mozilla the best monetization rates," which, in turn, enables Mozilla to "continue investing in [] R&D initiatives," "enhancing the current capabilities of [] Firefox," and "funding [] advocacy efforts that seek to promote a healthier internet ecosystem." RDX0338_at_222.

In renewing the Google Distribution Agreement, Mozilla has ensured that the agreement does not contain any exclusivity requirements and has continued to include and actively promote other search engines in Firefox.

Despite these uncontroverted facts, the District Court held that Mozilla's Google Distribution Agreement constitutes an impermissible exclusive contract because the designation of Google Search as the out-of-the-box default in Firefox "'clos[es] to rivals a substantial percentage of the available opportunities for [] distribution." *United States v. Google LLC*, 747 F. Supp. 3d 1, 146-49 (D.D.C. 2024). To reach this holding, the District Court had to aggregate the supposed foreclosure effect of Mozilla's Google Distribution Agreement—less than "2.3%" (the combined total for all Independent Browser Developers)—with the foreclosure effect of Google's larger contracts. *Id.* at 144-45, 158 (noting the Mozilla agreement "forecloses a far smaller percentage of the search market").

The District Court's conclusion that designating Google Search as the out-of-the-box search default in Firefox converted Mozilla's Google Distribution Agreement into a *de facto* exclusive agreement was both legally and factually erroneous. As detailed below, Mozilla has consistently partnered with Google's rivals and promoted their competing search engines despite having a default search agreement with Google. Moreover, Mozilla's three-year experience with Yahoo as the out-of-the-box search default and its subsequent user preference experiments establish that non-default search engines can compete for and win significant percentages of Firefox search traffic by presenting users with a preferable product and experience.

## RELEVANT FACTUAL BACKGROUND

### A. Mozilla's Procompetitive Mission To Build An Open And Healthy Internet Ecosystem

In 2003, a community of open-source software developers led by former Netscape engineers created the Mozilla Foundation, "a 501(c) nonprofit [organization] dedicated to the health of the Internet." Rem_Tr_3126:25-3127:1. The following year, the Mozilla Foundation launched the Firefox browser to provide users with an alternative to Microsoft's Internet Explorer, which had monopolized the U.S. browser market.[4] Within a year, Firefox—which pioneered features such

---

[4] https://foundation.mozilla.org/en/who-we-are/.

as tabbed browsing, pop-up blocking, and fraud protection[5]—was downloaded over 100 million times and ultimately gained a 32% share of the U.S. desktop browser market.[6]  In 2005, the Mozilla Foundation established Mozilla to oversee Firefox's commercial activities and develop other open-source products and services that promote a healthy internet.[7]

Consistent with its public-oriented mission, Mozilla has managed Firefox to prioritize people and societal benefits over profits.[8]  For example, based on its belief that "privacy is fundamental to a healthy internet," Mozilla collects limited user data[9] and has integrated market-leading privacy and security features into Firefox, including:

- **Enhanced Tracking Protection** (blocks known trackers that collect information about users' online activity and are hidden in visited websites)

- **Total Cookie Protection** (isolates website cookies to prevent them from tracking users' online activity across websites)

- **DNS over HTTPS** (prevents third parties from tracking users across websites by using an encrypted HTTPS connection to send domain

---

[5] https://blog.mozilla.org/press/2004/11/mozilla-foundation-releases-the-highly-anticipated-mozilla-firefox-1-0-web-browser/.

[6] https://www.mozilla.org/en-US/about/history/.

[7] https://www.mozilla.org/en-US/foundation/moco/.

[8] Mozilla's work is guided by the Mozilla Foundation's Manifesto, which sets forth ten principles for promoting an open and healthy internet that benefits society. *See* https://www.mozilla.org/en-US/about/manifesto/.

[9] https://www.mozilla.org/en-US/privacy/firefox/#notice.

names)

- **Fingerprinting Protection** (warns users about websites attempting to create digital fingerprints based on their browser and computer settings)

- **Firefox Monitor** (warns users if their accounts were involved in known data breaches or a visited website was previously breached)

- **Containers** (limits third-parties' ability to track users across websites)

- **Site Isolation** (enhances user security by launching each website in a separate process)

- **HTTPS-First** (improves default security by attempting to connect to websites using a secure, encrypted connection first)

- **Encrypted Client Hello** (extends security by encrypting initial connection to website)[10]

The steps taken by Mozilla to protect users' privacy and security have prompted Big Tech browsers to adopt similar protections. For example, when Apple adopted tracking protection, it publicly acknowledged that it was following Mozilla's lead: "We'd like to thank Mozilla for their anti-tracking policy which served as inspiration for ours."[11]

Although Firefox's market share has decreased due to the challenges that Independent Browser Developers face when competing with Big Tech companies, which use their ownership of operating systems and devices to self-preference their

---

[10] https://support.mozilla.org/en-US/kb/firefox-privacy-and-security-features; https://blog.mozilla.org/security/2021/05/18/introducing-site-isolation-in-firefox/.

[11] https://webkit.org/blog/9507/announcing-the-webkit-tracking-prevention-policy/.

browsers, it continues to serve 26 million monthly active users in the United States and over 200 million globally,[12] many of whom have specifically chosen Firefox because it is a mission-driven, non-Big Tech browser that prioritizes user privacy and safety.

In addition to Firefox, Mozilla has spearheaded initiatives and developed innovative products that have broadly benefited the internet and users.  For example:

- Mozilla co-founded the **Internet Security Research Group**, which, through its "Let's Encrypt" project, has significantly increased the use of website encryption by issuing billions of free HTTPS certificates to hundreds of millions of websites.[13]

- Mozilla created **Common Voice**, an open-source voice dataset covering 180 languages (many of which are largely ignored by the tech industry) and makes machine learning and voice tools more accessible to underserved communities.[14]

- Mozilla developed **Rust**, a widely used programming language that enhances memory security for critical online infrastructure and has been recognized by the U.S. government and large companies for its leading security protections.[15]

---

[12] https://data.firefox.com/dashboard/user-activity.

[13] https://letsencrypt.org/about/.

[14] https://www.fastcompany.com/91224595/mozilla-is-now-offering-free-ai-voice-training-data-in-180-languages.

[15] https://blog.mozilla.org/en/mozilla/mozilla-welcomes-the-rust-foundation/; https://aws.amazon.com/blogs/opensource/why-aws-loves-rust-and-how-wed-like-to-help/.

**B.    Mozilla Has Consistently Designed And Operated Firefox To Promote Search Competition And User Choice**

Recognizing the importance of search engine competition, Mozilla has steadily supported multiple search providers and empowered users to select among various search alternatives.

As Mozilla's former CEO testified, Mozilla has always provided Firefox users with a default search engine because "one of the fundamental use cases of the browser" is enabling users to immediately find and access information on the internet. Baker_Dep_34:1-35:14, 47:3-48:24. Mozilla's former CEO also testified that Mozilla selected Google as Firefox's default search engine from 2004 to 2014 because "Google was way ahead" of the competition in terms of quality and demonstrated the greatest willingness to work within Mozilla's mission-driven business model, particularly Mozilla's non-negotiable principle that "we were not doing anything exclusive and we would honor user choice." *Id.* at 47:12-48:24, 52:8-54:16.

Consistent with the agreement's non-exclusivity and Mozilla's strong commitment to user choice, Mozilla made it extremely easy for users to switch away from Google as their search default if they chose. For example, throughout this 10-year period, Mozilla designed Firefox to allow users to change the default search engine within a few clicks and included numerous non-default search engines that were readily accessible in Firefox's search bar. *Id.* at 48:2-49:11, 186:25-188:5. As

10

Mozilla noted in a 2014 blog post: "When we instituted a default search option in 2004], we . . . refus[ed] commercial terms that demanded exclusivity. And throughout the last 10 years, we have always provided pre-installed alternatives, and easy ways for our users to change, add, or remove search engines."[16]

While still viewing Google as the best search engine, Mozilla switched Firefox's U.S. search default to Yahoo in 2014 to promote greater search competition and innovation.[17] However, as Mozilla's CFO testified, Mozilla learned "almost immediately [] that [Firefox] users did not like the Yahoo! Search experience," as reflected in user "complaints," "[s]earch volume decline," "people shift[ing] away from the default . . . to another search engine," and "people [ultimately] shifting away from [Firefox]." Rem_Tr_3144:9-21.

Consequently, Mozilla switched Firefox's U.S. search default back to Google in 2017 because "Google is the clear winner when it comes to product experience and what users want." DX0543_at_493.[18] Mozilla reached this conclusion based on a careful evaluation of its different search partner options. *Id.* After switching

---

[16] "New Search Strategy for Firefox: Promoting Choice and Innovation" ("Mozilla Search Strategy Blog"), *available at* https://blog.mozilla.org/press/2014/11/new-search-strategy-for-firefox-promoting-choice-and-innovation/.

[17] Mozilla Search Strategy Blog, *supra* n.16 (selection of Yahoo as U.S. search default was part of Mozilla's strategy to "increase choice and innovation on the Web").

[18] Baker_Dep_80:19-24 (Mozilla returned to Google "[b]ecause our users made it clear that they look for and want and expect Google").

from Yahoo back to Google, Mozilla experienced a sharp increase in the use of Firefox's search default, which, in turn, resulted in higher search revenues. Baker_ Dep_75:4-76:23, 79:15-80:24, 191:11-192:25.

Since 2017, Mozilla has continuously renewed the Google Distribution Agreement because the "extension[s] allow[] Mozilla to continue offering Firefox users the best search experience by incorporating the search product and services that [Mozilla's] experience shows are the highest quality," and because "Mozilla cannot effectively compete with other browser developers without the continued integration of the industry leading search product and services." RDX0338_at_222. In addition, Mozilla's "experience and research ha[ve] shown that Google Search provides Mozilla the best monetization rates," thereby enabling Mozilla to "continue investing in [] R&D initiatives," "enhancing the current capabilities of [] Firefox," and "funding [] advocacy efforts that seek to promote a healthier internet ecosystem." *Id.*[19]

Before renewing its Google Distribution Agreement, Mozilla carefully evaluated its search partner options and conducted experiments to determine which default search engine Firefox users preferred. *Google*, 747 F. Supp. 3d at 97 ("Mozilla has run experiments to assess a potential switch of the default GSE from

---

[19] Rem_Tr_3129:1-3130:18 (Mozilla CFO detailing procompetitive use of Google search revenue).

Google to a rival.  It tends to run these experiments when its agreements come up for renewal.").  Each time, Mozilla found "Google's [quality] to be superior."  *Id.* at 144.

When extending the Google Distribution Agreement, Mozilla always ensured that the agreement "does not restrict in any way Mozilla's ability to continue promoting user choice" or "partner with other search providers."  RDX0338_at_222.  Mozilla also continued to (i) make it easy for users to change the search default; (ii) include and promote competing search engines in Firefox's search bar; (iii) integrate features that present users with readily available non-default search engine alternatives (*e.g.*, "This time, search with"); and (iv) facilitate users' ability to quickly find information without using the default search engine (*e.g.,* "Firefox Suggest").  Rem_Tr_3146:6-3149:4, 3177:13-25.

Mozilla's focus on enhancing competition has not been limited to search.  Mozilla is presently using Firefox to promote user choice and competition in the fast-evolving artificial intelligence ("AI") market.  For example, Firefox includes a sidebar that lists numerous large language models and allows users to choose and interact with their preferred service.[20]  In addition, Firefox has developed a "Smart Window" that incorporates an AI assistant, again giving users choice over the built-

---

[20] https://support.mozilla.org/en-US/kb/ai-chatbot.

in AI model powering the assistant.[21]  Alongside these AI features in Firefox, Mozilla has developed AI controls, allowing users to disable current and future generative AI features.[22]

Moreover, Mozilla has developed tools that promote AI security and other open-source AI tools, including:

- **0DIN** (bug bounty platform designed to identify and mitigate vulnerabilities in AI systems)
- **Llamafile** (open-source project enabling large language models to be distributed and operated through a single executable file that runs across six operating systems)
- **Lumigator** (open-source tool that helps developers evaluate, compare, and select the best large language model for specific tasks)
- **any-llm/tinyagent** (open-source platform that allows developers to communicate with different large language models through a single interface)[23]

### C. Mozilla's Gecko Browser Engine Promotes Open And Secure Web Standards And Provides Website And Browser Developers With The Only Non-Big Tech Alternative

The "browser engine" is a browser's "core software" because it interprets a website's code and presents its content in a graphical format that users see and

---

[21] https://www.firefox.com/en-US/smart-window/.

[22] https://blog.mozilla.org/en/firefox/ai-controls/.

[23] https://www.mozilla.org/en-US/foundation/annualreport/2024/article/empowering-developers-with-open-ai-tools-for-a-trustworthy-future/; https://www.mozilla.ai/.

interact with.[24]  Because browser engines "are the layer where structural decisions about the web are made," browser engine developers are central to determining web standards, including privacy and security standards.[25]

Since its founding, Mozilla has developed and supported the Gecko browser engine, an open-source engine that powers Firefox and several other non-Big Tech browsers.  Rem_Tr_3130:20-21, 3162:23-25.  Mozilla has invested approximately $2 billion in Gecko and used its role as the developer of Gecko to successfully advocate for open web standards that prevent "big tech . . . [from] control[ling] all of the protocols by which people would be able to browse the Internet."  *Id.* at 3131:9-13.

Today, because of the significant cost and complexity of developing and maintaining a browser engine, only three engines remain (Mozilla's Gecko, Google's Chromium, and Apple's WebKit).[26]  Gecko is "the only browser engine that is held not by big tech but by a nonprofit."  Rem_Tr_3131:2-4.

---

[24] "Competition, Innovation and the Future of the Web—Why Independent Browser Engines Matter" ("Mozilla Browser Engine Blog"), *available at* https://blog.mozilla.org/netpolicy/2026/03/23/competition-innovation-and-the-future-of-the-web/.

[25] Mozilla Browser Engine Blog, *supra* n.24.

[26] Mozilla Browser Engine Blog, *supra* n.24.

## ARGUMENT

### I.     THE DISTRICT COURT ERRONEOUSLY HELD THAT MOZILLA'S GOOGLE DISTRIBUTION AGREEMENT IS AN EXCLUSIVE DEAL

By its terms and in practice, Mozilla's Google Distribution Agreement is not an "exclusive" deal.  As the trial record irrefutably establishes, Mozilla ensured that the agreement never contained any express or implicit exclusivity requirement.  *See* Baker_Dep_47:12-48:24, 52:8-54:16 (Google accepted Mozilla's non-negotiable position that "we were not doing anything exclusive and we would honor user choice"); RDX0338_at_222 ("The contract extension does not restrict in any way Mozilla's ability to continue promoting user choice when it comes to a user's preferred search engine nor does it restrict Mozilla's ability to partner with other search providers.").[27]

The trial record also irrefutably establishes that Mozilla selected Google as the Firefox search default based on product quality and user preference, not because of any exclusivity requirement.  *See* DX0543_at_493 ("Google is the clear winner when it comes to product experience and what users want."); RDX0338_at_222

---

[27] Rem_Tr_3154:1-3157:23 (Mozilla CFO testifying that Google Distribution Agreement "didn't" prevent Mozilla from partnering with Google competitors); *Google*, 747 F. Supp. 3d at 147 (Google Distribution Agreement permits Mozilla to "contract with [Google] rivals"); *id.* ("Google's agreement with Mozilla permits the 'this time, search with' feature on Firefox, which allows users to select a different search product from its 'Awesome Bar' for a given query."); *id.* at 44 (Firefox "users can navigate to the browser's setting and change the default to their preferred GSE").

("The [contract] extension allows Mozilla to continue offering Firefox users the best search experience by incorporating the search product and services that our experience shows are the highest quality.").[28]

Thus, the general "'prerequisite to any exclusive dealing claim'"—"'an agreement to deal exclusively'"—is missing here. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1181 (9th Cir. 2016) (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012)).

Nonetheless, the District Court held that Mozilla's Google Distribution Agreement constitutes an impermissible *de facto* exclusive deal "insofar as [it] establish[es] Google as the out-of-the-box default search engine [in Firefox]." *Google*, 747 F. Supp. 3d at 146-47. Although the District Court "accept[ed] that the user experience of a browser is enhanced when the [search] default is excellent" and that Google "has long been the best search engine," it nevertheless concluded that designating Google as the out-of-the-box search default in Firefox impermissibly "'clos[es] to rivals a substantial percentage of the available opportunities for []

---

[28] Rem_Tr_3129:3-7 ("Because our experience and based upon research, Google is the preferred search engine of our users, and so that's the right search engine from a consumer experience perspective for us to make the default.").

distribution.'" *Id.* at 144, 149, 174.[29]   Neither the caselaw nor the trial record supports this conclusion.

For example, Mozilla's real-world experience with Yahoo as the Firefox default establishes that non-default search engine providers can fully compete for users and search traffic on Firefox.  This is especially true because Mozilla has intentionally designed Firefox to enable users to freely choose among different search providers.  As Mozilla's CFO testified, during the three-year period that Yahoo was the out-of-the-box search default, non-default search engine providers secured a significant percentage of Firefox search traffic because users were dissatisfied with Yahoo's search quality.  Rem_Tr_3144:12-21 ("[O]ur users did not like the Yahoo! Search experience," which led to (i) "people shift[ing] away from the default [toward] another search engine," (ii) [s]earch volumes declin[ing]," and (iii) "people [] shifting away from [Firefox].").

Mozilla's business documents fully corroborate this testimony. DX0543_at_491 ("Yahoo! was unable to retain sufficient usage due to the poor quality of their product experience which resulted in decreasing engagement and retention rates."); RDX340_at_776 ("Low default retention with ~20% of Firefox

---

[29] Because Mozilla's Google Distribution Agreement accounts for less than "2.3%" of the relevant search traffic, the District Court held that the agreement had the requisite foreclosure effect only after aggregating this traffic with the search traffic covered by Google's larger agreements.  *Google*, 747 F. Supp. 3d at 44-45, 158.

users retaining Yahoo! Search as default (down from 90% retention for Google)");

*id.* (switch to Yahoo led to "[s]earch volumes declin[ing] substantially," "[user] complaints," and "Firefox retention decreas[ing] as users switched to a different browser altogether").

The findings in Mozilla's user preference experiments also demonstrate that non-default search engines can fully compete for and win significant percentages of Firefox's search traffic. Before selecting a default search engine, Mozilla conducts user preference experiments in which it sets non-Google search engines as the default. *Google*, 747 F. Supp. 3d at 97. These experiments have repeatedly shown that Firefox users strongly prefer Google as their out-of-the-box default search engine and that significant percentages of users either change or minimize their use of the default when another search engine holds that position:

- "In a 2016 experiment, Mozilla switched the default GSE on both new and existing users from Google to Bing. By the twelfth day, Bing had kept only 42% of the search volume. After some additional time, those numbers dropped to 20-35%, depending on certain variables." *Id.*

- "Mozilla conducted a[] [2016] experiment switching the default GSE to Yahoo. Yahoo only retained 16.5% of the total search volume." *Id.*

- "In 2017, Mozilla conducted a similar test, with Bing replacing Google. After 14 days, Bing retained 52.3% of search volume." *Id.*

- "From 2021 to 2022, Mozilla once again switched the default GSE to Bing for 0.5% of desktop Firefox users. As a result, search volume decreased by 7% and ad clicks went down 13%. Mozilla found: (1) '35.5% of clients who had their default search engine switched to Bing changed their default to another search engine (26% changed to Google,

19

9% changed to a search engine other than Bing or Google and the remaining kept Bing);' (2) the '64.5% of clients who did not switch away from Bing contributed a much lower percentage to total search volume and ad clicks than clients who switched back to Google;' and (3) '65% of users who did not retain Bing as their default engine made the change within the first day[.]'" *Id.*

After the District Court's liability decision, Mozilla conducted a five-month analysis to project its search revenue if the remedies in this case were to require Mozilla to set Bing as the out-of-the-box search default in Firefox. Consistent with Mozilla's earlier experiments, the analysis found that Mozilla's search revenue would decline dramatically because a "[s]ignificant number of users [would] change [their] search [default] away from Bing," while users who remained on Bing would have far lower usage and monetization rates. RDX340_at_769, 771.

The fact that Mozilla proactively promotes non-default search engines further establishes that Mozilla's Google Distribution Agreement is non-exclusive. For example, as the trial exhibit below (RDX25) demonstrates, Mozilla includes various non-default search engines in Firefox and promotes their use through its "this time, search with" feature:

Firefox's "This Time Search With" Feature – Desktop



Firefox's "This Time Search With" Feature – iOS



The image below demonstrates how Mozilla promotes the use of non-default search engines through the "Firefox Suggest" feature:

21



In short, Mozilla's Google Distribution Agreement—which accounts for less than "2.3%" of the relevant search traffic (*Google*, 747 F. Supp. 3d at 44-45, 154)—cannot, as a legal or factual matter, constitute an impermissible exclusive contract because:

- The agreement does not contain any express or implicit exclusivity requirements.

- In practice, the agreement has not operated as an exclusive agreement because Mozilla has consistently included various non-default search engines in Firefox and made them readily accessible to users in the search bar.

- While designating Google as the out-of-the-box search default based on quality and user preference, Mozilla has intentionally designed Firefox to make it easy for users to change the default whenever they choose and provides them with information on how to make this change.

- Mozilla has integrated features into Firefox that proactively present users with the opportunity to conduct searches using non-default search engines.

- Mozilla's three-year experience with Yahoo as the out-of-the-box

search default in Firefox and repeated user preference experiments demonstrate that non-default search engines can compete for and win a significant percentage of Firefox search traffic when they present users with a preferable product and experience.

As the Third Circuit concluded in *Eisai, Inc. v. Sanofi Aventis U.S., LLC* when rejecting a *de facto* exclusive dealing claim, "if customers are free to switch to a different product in the marketplace but choose not to do so, competition has not been thwarted—even if a competitor remains unable to increase its market share. One competitor's inability to compete does not automatically mean competition has been foreclosed." 821 F.3d 394, 403-04 (3d Cir. 2016); *see also Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162-63 (9th Cir. 1997) (reversing denial of defendant's post-jury trial motion for judgment as a matter of law on exclusive dealing claim because, "[i]f competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether [] restrictions [on distributors] foreclose from competition *any* part of the relevant market").

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's erroneous holding that Mozilla's Google Distribution Agreement constitutes an impermissible "exclusive" contract.

Dated:  May 29, 2026                              Respectfully submitted,

/S/ JUAN A. ARTEAGA
JUAN A. ARTEAGA
ROSA M. MORALES
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
juan.arteaga@sidley.com
rosa.morales@sidley.com

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the word-count limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B)(i).  This brief contains 4,498 words, not counting the parts excluded by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

/s/ Juan A. Arteaga
Juan A. Arteaga

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I caused the foregoing document to be electronically filed through this Court's CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Juan A. Arteaga
Juan A. Arteaga

26